E. A. STONE & CO. *v.* UNITED STATES (NO. 3448) [1]

United States Court of Customs and Patent Appeals, November 27, 1931

*H. T. E. Beardsley* (*John J. Bradley* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty*, special attorney, of counsel), for the United States.

---

[1] T. D. 45338.

[Oral argument October 15, 1931, by Mr. Bradley and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court: [1]

This is an appeal from a judgment of the United States Customs Court holding that old woolen rags were properly dutiable at 7½ cents per pound as "woolen rags" under paragraph 1105 of the Tariff Act of 1922, as assessed by the collector at the port of New York.

Paragraph 1105 reads:

PAR. 1105. Top waste, slubbing waste, roving waste, and ring waste, 31 cents per pound; garnetted waste, 24 cents per pound; noils, carbonized, 24 cents per pound; noils, not carbonized, 19 cents per pound; thread or yarn waste, and all other wool wastes not specially provided for, 16 cents per pound; shoddy, and wool extract, 16 cents per pound; mungo, woolen rags, and flocks, 7½ cents per pound. Wastes of the hair of the Angora goat, Cashmere goat, alpaca, and other like animals shall be dutiable at the rates provided for similar types of wool wastes.

It is contended by the importer that the merchandise is free of duty as junk, old, under paragraph 1601 of that act, which reads:

PAR. 1601. Junk, old.

It appears from the record that the woolen rags in question are sold to shoddy or woolen mills to be remanufactured into shoddy, and that they are unfit for the purposes for which they were originally manufactured. Before the rags can be manufactured into shoddy—wool fiber obtained by shredding the rags into their original fibers—they must be cleaned, and buttons, hooks, and other foreign material removed therefrom. This process was referred to by the witnesses as a carbonizing process.

In this connection, the importers' witness, Edward A. Stone, said—

The rags, old rags as a rule, contain cotton facing. They might have some buttons or buckles on them, or other trimmings, which it is necessary for the manufacturer of shoddy or woolen to remove before he converts them into shoddy. It might also be necessary to remove a great deal of dust, through the dusting process, before they could be used.

The court below held that the imported merchandise was dutiable under the provision for woolen rags contained in paragraph 1105, on the authority of the decision of this court in the case of *United States* v. *Castle & Overton (Inc.)*, 18 C. C. P. A. (Customs) 21, T. D. 43976.

It is contended by counsel for appellant that the necessity of removing buttons, hooks, and other foreign material from the woolen rags there involved, in order to put them in condition suitable for remanufacture into shoddy, did not appear in the *Castle & Overton* case, *supra;* that the necessity for the removal of such foreign material for the purpose mentioned does appear in the case at bar; that the

---

[1] Rehearing denied.

process of removing such foreign material is a manufacturing process; and that, therefore, the issues here involved are clearly distinguishable from those before this court in the above-cited case.

It is further argued by counsel for appellant that this court was wrong in holding in its decision in the *Castle & Overton* case that the provision for woolen rags, in paragraph 1105, was intended to include old as well as new woolen rags.

It is contended that it is clear from the provisions of paragraph 1105 and from the Summary of Tariff Information, 1921, that the Congress intended to limit the provision for woolen rags in that paragraph to new woolen rags, that is, those materials discarded in manufacturing processes. It is further contended that the involved articles are worn-out or discarded manufactured articles, which, due to wear and other causes, have been rendered unsuitable for the purposes for which they were originally manufactured, and that they are not, therefore, included within the provisions for woolen rags contained in paragraph 1105, but were intended by the Congress to be free of duty under the provision for junk, old, contained in para graph 1601.

It is conceded by the Government that the merchandise is junk, old, and that it is covered by paragraph 1601. Counsel for the Government contends, however, that the involved rags are *eo nomine* provided for as "woolen rags" in paragraph 1105, and are more specifically provided for therein as such, than as junk, old, in paragraph 1601, and that the issues here involved have been fully determined by this court in the *Castle & Overton* case, *supra*.

In the *Castle & Overton* case, this court, in an opinion by Lenroot, J., held that, although old woolen rags, unsuitable for the purposes for which they were originally manufactured and fit only for remanufacture into shoddy, might be covered by the provision for junk, old, contained in paragraph 1601, they were, nevertheless, more specifically provided for as "woolen rags" in paragraph 1105. It appeared in that case, as argued by counsel for the importer, that, as imported, the woolen rags were fit only for remanufacture into shoddy, whereas, in the case at bar, it appears that the involved woolen rags must be cleaned and foreign materials removed before they can be remanufactured.

It is well settled that—

As a general rule, a mere cleansing process, the purpose of which is to isolate the article of commerce from impurities, *and which does not advance it beyond a clean state or condition,* and which does not affect the article per se, can not be said to be * * * a manufacturing process in a tariff sense. (Italics ours.)

Furthermore—

the removal of buttons, hooks, and other foreign matter from a material for the *sole purpose* of getting the material by itself. (Italics ours.)

is not a manufacturing process. *Pacific Iron & Metal Co. et al. v. United States*, 15 Ct. Cust. Appls. 433, T. D. 42605.

A carbonizing process, the sole purpose and effect of which is to isolate an article of commerce from impurities, is not a manufacturing process. *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296.

In the case at bar, it appears that the removal of the foreign matter from the involved rags was for the sole purpose of isolating them from their impurities so that they could be remanufactured, and that the rags, by such processing, were not advanced beyond a clean state or condition. When cleaned, the rags were fit only for remanufacture into shoddy. Accordingly, we must hold that, in their imported condition, the involved rags were commercially usable only as material in the manufacture of shoddy, and that the issues here are not distinguishable from those before us in the *Castle & Overton* case, *supra*.

In the case of *Central Vermont Railway Co.* v. *United States*, 10 Ct. Cust. Appls. 31, T. D. 38260, this court held that paragraph 651 of the Tariff Act of 1913, the predecessor of paragraph 1105, *supra*, was not intended by the Congress to be limited to wastes resulting from manufacturing processes, but was intended to include refuse woolen goods such as old stockings, rags, cloths, etc. This court there called attention to the fact that paragraph 374 of the Tariff Act of 1909 provided *eo nomine* for woolen rags, and that, although woolen rags were not *eo nomine* provided for in paragraph 651 of the Tariff Act of 1913, nor in any other provision of that act, nevertheless, it appeared to be the congressional purpose to include old woolen rags in the provision for "all other wastes not specially provided for," contained in paragraph 651.

The decision in the above case, rendered February 2, 1920, reversed the decision of the Board of General Appraisers (now United States Customs Court), which held, in G. A. 8262, T. D. 38052, that paragraph 651 of the Tariff Act of 1913 was intended by the Congress to be limited to wastes resulting from manufacturing processes. This decision, and the fact that the case was then pending on appeal in this court, was called to the attention of the Congress in the Summary of Tariff Information, 1920.

In the Summary of Tariff Information, 1921, prepared by the Tariff Commission for the information of the Committee on Finance of the Senate, it was reported that—

Woolen rags include all rags wholly or in part of wool except those unfit for remanufacture and used as paper stock. Rags are torn up on a rag picker or "devil" (as it is called in Yorkshire) to shred them into their original fibers before they are ready for remanufacture. Rags are of many different classes, varying from new clippings from the finest cloths to old and worn-out suits of the poor. The materials vary widely in value but the average is very low.

Shoddy is the wool fiber obtained by tearing apart the yarns in soft woolen fabrics, such as old stockings and sweaters. Mungo is a much lower-grade product, with shorter fiber, obtained by tearing apart the yarns in hard woolen cloths. Wool extract is shoddy or mungo from which cotton or other vegetable fibers have been removed by carbonization. Recovered wool fibers, such as shoddy and mungo, are used as a substitute for new wool and are of considerable economic importance. They can not be used in making worsteds on account of the shortness of the fiber, but go into the manufacture of woolens of various classes.

\* \* \* \* \* \* \*

This paragraph is intended to cover all varieties of wool waste and wool waste materials, and to adjust the duties in fair ratio to the relative value of such articles. Top waste, slubbing waste, roving waste, and ring waste sell at approximately the same price as the raw wool of which they are made; therefore, the same specific rate of duty has been applied as that on raw wool, although without the maximum ad valorem provision. Garnetted waste sells at a lower price than the four preceding types and so is assessed a lower duty. Carbonized noils come next in value and are dutiable at a higher rate than the uncarbonized noils from which they are made. Thread or yarn waste and other unspecified wastes, such as card waste and bur waste, are ranked next in value and duty. Prices of thread or yarn waste vary widely, however. After the above wastes of manufacture have been provided for, there are inserted duties on shoddy and wool extract (carbonized shoddy) at the same rate as unspecified wastes of manufacture. In general, prices of shoddy resemble those of thread and yarn waste, both fluctuating widely. Mungo, which is a cheaper material than shoddy, is given the same rate as woolen rags, at a much lower rate than that levied on shoddy. Flocks, which are the lowest and cheapest form of wool waste, are placed in the last-named classification instead of being given a special lower rate, because they are of almost negligible importance.

There are many varieties of the different types of waste and of waste materials, but the above classification has been made up on the basis of the general levels of price and is considered a logical order.

From what has been said it is obvious that the Congress intended to include within the term "woolen rags," contained in paragraph 1105, *supra*, both old and new woolen rags, and to include all such as were not more specifically provided for elsewhere in the act. Accordingly, we must hold that our decision in the *Castle & Overton* case, *supra*, is *stare decisis* of the issues here involved.

For the reasons stated, the judgment is *affirmed*.